**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-24492-Civ-GAYLES/TORRES

X-RAY DIAGNOSTIC AND ULTRASOUND
CONSULTANTS LIMITED,

      Plaintiff,

v.

GENERAL ELECTRIC COMPANY and
GE HEALTHCARE, INC.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' AMENDED
MOTION TO DISMISS AND/OR TO STRIKE**

      This matter is before the Court on General Electric Company's and GE Healthcare, Inc.'s (collectively, "GE" or "Defendants") amended motion to dismiss [D.E. 8] Counts I through VIII of the complaint filed by X-Ray Diagnostic and Ultrasound Consultants Limited ("X-Ray or "Plaintiff") and/or to strike certain damage categories and Plaintiff's jury demand. Plaintiff responded to Defendants' motion on November 27, 2020 [D.E. 18] to which Plaintiff replied on December 4, 2020. [D.E. 20]. Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendants' motion should be **GRANTED in part** and **DENIED in part**.[1]

---

[1] On November 9, 2020, the Honorable Darrin P. Gayles referred any dispositive matters to the Undersigned Magistrate for a Report and Recommendation. [D.E. 7].

1

## I.   BACKGROUND

X-Ray is a provider of diagnostic radiology services and planned to establish a molecular imaging center and nuclear laboratory located in Kingston, Jamaica (the "Lab"). One of the main purposes of the Lab was to produce radioactive isotopes with the use of a cyclotron. X-Ray engaged GE to supply the Lab's necessary equipment, including the cyclotron, and to allegedly design and construct the Lab. To govern the relationship, the parties entered into various agreements, including the International Financed Sales Agreement (the "IFSA"), which is attached to the complaint. Although the IFSA explicitly states that GE was not responsible for it, X-Ray alleges that GE undertook to provide equipment and installation and commissioning services in respect to the heating, ventilation, and air conditioning ("HVAC") system for the Lab. For instance, in a letter dated October 28, 2015, GE allegedly provided a quotation for the HVAC component of the Lab build-out.

The HVAC system was critical to the Lab because it was needed to ensure 100% of outside air or fresh air was supplied for the Lab to meet international nuclear energy standards set by the International Atomic Energy Agency ("IAEA"). Once the Lab was purported to be complete, GE allegedly assured X-Ray the Lab was completed such that it operated using 100% outside air or fresh air. X-Ray was denied certification by the IAEA, however, because the Lab consistently operated below the 100% outside air or fresh air threshold. X-Ray has requested GE to remedy the problem, but they have not, and the Lab remains uncertified by the IAEA. This

failure of the HVAC system has also caused several pieces of equipment in the Lab to be damaged by water from condensation, including the cyclotron.

This is not the only alleged shortcoming of GE in relation to their work on the Lab. GE allegedly delayed the construction of the Lab by installing an inadequate epoxy for a custom floor below the cyclotron and miscommunicated on the procurement of pure specialized gases and a custom air compressor. Additionally, GE allegedly failed to provide (1) a device for the electronic storage of images ("PACS System") that operated in a commercially proper manner and (2) X-Ray employees with specialized training to run and operate the Lab. As a result, to date, the Lab is unable to operate in a commercially acceptable manner.

Plaintiff initiated this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. [D.E. 1, Ex. A]. On October 30, 2020, Defendants removed the action to this Court. [D.E. 1]. Plaintiff brings eight causes of action against Defendants in its complaint: (1) Negligence (General Electric Company); (2) Negligence (GE Healthcare); (3) Breach of Warranty (General Electric Company); (4) Breach of Warranty (GE Healthcare); (5) Breach of Contract (General Electric Company); (6) Breach of Contract (GE Healthcare); (7) Unjust Enrichment (General Electric Company); and (8) a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (General Electric Company). Defendants move to dismiss all eight counts and/or to strike certain damages categories and Plaintiff's jury demand. [D.E. 8].

## II. APPLICABLE PRINCIPLES AND LAW

In ruling on a defendant's motion to dismiss, a court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the [plaintiff]." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts set forth in [the plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Factual content gives a claim facial

plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

### III.   ANALYSIS

Plaintiff's claims fall into five categories: (1) negligence; (2) breach of warranty; (3) breach of contract; (4) unjust enrichment; and (5) FDUTPA.  We address each category in turn and then Defendants' requests to strike the jury demand and certain damages.

#### A.   *Negligence (Counts I and II)*

Under Florida law, a plaintiff must allege four elements to properly plead negligence: (1) a duty; (2) breach of that duty; (3) causation; (4) and harm. *Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1378 (S.D. Fla. 2015) (citing *Florida Dept. of Corrections v. Abril*, 969 So. 2d 201, 205 (Fla. 2007)).  GE first argues that the negligence claims should be dismissed because the alleged duties of reasonable care are contradicted by the IFSA.  X-Ray does not dispute the terms of the IFSA but argues that Defendants have a duty of care independent of the contract.  Defendants counter that any such duty clearly exists from the IFSA and the negligence claims fail under the independent tort doctrine.

The independent tort doctrine requires a plaintiff to demonstrate that a tort claim is independent of any breach of contract claim. *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408-09 (Fla. 2013) (Pariente, J., concurring) (noting that the principle of the doctrine is to restrict remedies in tort when parties have

5

already specifically negotiated for contractual remedies). Therefore, for the negligence claims to survive, any duty that GE had to build the Lab, including installing the HVAC system, must have arisen from GE's conduct outside of the IFSA. *See Matonis v. Care Holdings Group, LLC*, 423 F. Supp. 3d 1304, 1311 (S.D. Fla. 2019) ("The independent tort doctrine does not bar claims where the plaintiff has alleged conduct that is independent from acts that breached the contract and does not itself constitute breach of the contract at issue.") (citation omitted).

Reviewing the complaint irrespective of the IFSA, the negligence claims are independent from GE's acts that could have breached the IFSA, and the standard of care pled is sufficient to survive a motion to dismiss.[2] *See Coast to Coast Supply Sols., LLC v. Bank of Am., Corp.*, 2020 WL 2494487, at *2 (M.D. Fla. May 14, 2020) ([I]t is permissible to have a breach of contract count and a negligence count in the same complaint without running astray of the independent tort doctrine. In addition, general negligence claims are not required to be pled with particularity.") (citing *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005)). Specifically, these negligence claims relate to overseeing the installation and build-out of the HVAC system, which is not part of the IFSA. Defendants concede that the IFSA does not govern their alleged role in the sale or installation of the HVAC system, yet that system is the focus of the negligence claims. The negligence claims are thus

---

[2] The allegations supporting the negligence claims are detailed in paragraphs 75, 76, 81, and 82 of the complaint. [D.E. 1, Ex. A]. Though these allegations refer to duties owed by GE to those "customers" and entities with which it "contracts" and to GE's "breaches," at this stage of litigation and construing the allegations in the light most favorable to Plaintiff as we must, these allegations can be read to have occurred from GE's conduct outside of the IFSA.

independent of the contract claims. *See Wistar v. Raymond James Fin. Servs., Inc.*, 365 F. Supp. 3d 1266, 1271 (S.D. Fla. 2018) (holding a plaintiff sufficiently alleged a tort action apart from a contract); *Brink v. Raymond James & Assocs.*, 2015 WL 11198241, at *3 (S.D. Fla. June 29, 2015) (same).

GE next argues that X-Ray has failed to allege that GE caused personal injury or property damage in connection to the breach of any duty owed by GE. GE does state that the complaint alleges property damage from the HVAC system's failures but argues the IFSA explicitly states that GE had no duty for the installation or sale of the HVAC system. This argument is based on the same reasoning as the previous argument and thus fails for the same reason; the complaint sufficiently alleges that GE had a duty of care related to the HVAC system outside the terms of the IFSA. Accordingly, Defendants' motion to dismiss Counts I and II should be **DENIED**.

### B.     *Breach of Warranty (Counts III and IV)*

For the sale of goods, a breach of warranty claim under Florida law requires the following elements: (i) facts in respect to the sale of goods; (ii) identification of the type of warranty created; (iii) facts in respect to the creation of that particular type of warranty; (iv) facts in respect to the breach of warranty; (v) notice to seller of breach; and (vi) injuries sustained by the buyer as a result of the breach of warranty. *Iron Bridge Tools, Inc. v. Meridian Int'l Co., USA*, 2016 WL 8716673, at *12 (S.D. Fla. Feb. 2, 2016) (citing *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351 (Fla. 4th DCA 1977)). Florida also recognizes an implied breach of warranty claim for "failure to construct according to plans or in a workmanlike or acceptable

manner, or for failure to provide a unit or building which is reasonably habitable." *Schmeck v. Sea Oats Condo. Ass'n, Inc.*, 441 So. 2d 1092, 1097 (Fla. 5th DCA 1983) (collecting cases).

Relating to the sale of goods, Defendants challenge the first element. According to them, the complaint fails to allege sufficient facts pertaining to the equipment GE sold to X-Ray. In response, Plaintiff claims it alleged specific facts regarding the equipment sold to it in the complaint's attached Exhibit C. Exhibit C is apparently a letter to GE dated January 5, 2018 that itemizes the various problems with the equipment purchased by X-Ray. Yet, no Exhibit C is attached to the complaint, only an Exhibit A and B. [D.E. 1, Ex. A]. Plaintiff cannot rely on such unattached document, so we must side with Defendants in finding Plaintiff has failed to establish its breach of warranty claims based on the sale of equipment by GE.

Nonetheless, Plaintiff argues that it pled facts to establish an implied breach of warranty for a suitable and complete Lab. Plaintiff fails to identify which allegations support this, however. This is because they are non-existent, and the allegations supporting the breach of warranty counts refer to equipment and the Lab working in a "commercial operational manner," "fit for the particular purpose to facilitate the operation of the Laboratory," and "failure to warn, disclose or instruct" of problems. [D.E. 1, Ex. A, ¶¶ 87-88, 90.]. There is thus no implied warranty claim in the complaint based on construction workmanship. As a result, Defendants' motion to dismiss Counts III and IV should be **GRANTED *with leave to amend***.

### C. *Breach of Contract (Counts V and VI)*

The elements of a breach of contract action governed by Florida law are well established. "The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). There is no dispute there is a valid contract between the parties, the IFSA and its related agreements. GE argues that these agreements were not breached because no term in them required it to design and construct the Lab, including the installation of the HVAC system. We agree.

X-Ray's best argument that a contract required GE to design and construct the Lab is a bullet point in Schedule A of the IFSA, which X-Ray contends required GE to provide it with "[a]s built technical drawings (electrical, mechanical, pneumatic & process schemes)" for the Lab. [D.E. 1, Ex. A]. This is misleading. First, Schedule A is a detailed list of equipment that X-Ray promises to purchase under the IFSA. Second, Schedule A requires an entity called "Comecer" to supply the technical drawings, not GE. Third, the technical drawings are for the equipment to be installed in the Lab, not for the design and construction of the Lab. Fourth, Schedule A explicitly states that "building construction" and unloading the equipment from the delivery truck to the Lab is not included with the purchase of the equipment. The IFSA thus reflects the terms and conditions of GE's sale and financing of equipment, not the design construction of the Lab, no matter how favorable the Court could try and construe the allegations in favor of Plaintiff. *See Meadors v. Carnival Corp.*, 281

F. Supp. 3d 1304, 1308-09 (S.D. Fla. 2017) ("When a plaintiff's breach of contract allegations are belied or contradicted by the actual contract, then that plaintiff may not continue with her claim because the actual contract language (not her allegations) control.").

As a result, Defendants' motion to dismiss Counts V and VI should be **GRANTED**. But if Plaintiff can state a different breach of contract claim, it may amend its complaint.

### D. *Unjust Enrichment (Count VII)*

Under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). However, [t]he undisputed existence of a contract, especially a written one that is part of the record, generally defeats . . . unjust enrichment . . . .". *See, e.g.*, *Southgate Constructors, LLC v. Renar Dev. Co.*, 2008 WL 11333294, at *2 (S.D. Fla. Jan. 18, 2008), *report and recommendation adopted*, 2008 WL 11331845 (S.D. Fla. Feb. 29, 2008). However, a party may plead in the alternative for relief under an express contract and for unjust enrichment but only "where one of the parties asserts that the contract governing the dispute is invalid. *See Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013). Plaintiff's only defense is that it may plead unjust

enrichment in the alternative to its breach of contract claims in any scenario. This is not the law.

Because there is an expressed contract, the IFSA, and the parties do not dispute that it is valid, Defendants' motion to dismiss Count VII should be **GRANTED** *with prejudice*.

### E. *FDUPTA (Count VIII)*

In Count VIII, X-Ray claims that GE violated FDUTPA. GE did so by allegedly deceiving X-Ray into buying the PACS System at full market price that GE represented would provide X-Ray with remote access to stored images for the use of its staff and referring doctors globally, but the PACS System failed to operate in a commercially proper manner. [D.E., Ex. A, ¶ 117]. The PACS System allegedly failed to work properly because its software was outdated at the time it was purchased and was no longer supported to receive the requisite software updates needed to function properly. *Id.* ¶¶ 118-19.

GE argues this statutory claim is time barred. The statute of limitations for Plaintiff's claim under FDUTPA is four years. Fla. Stat. § 95.11(3)(f) (2006). GE contends that X-Ray's deadline to file its FDUTPA claim was in 2017 because it purchased the PACS System on October 2, 2013 and the alleged defects were known upon receipt of the equipment. To support this argument, Defendants attach the alleged sales agreement for the PAC System to their motion, which is signed by a legal representative of X-Ray (the "PACS Agreement"). [D.E. 8, Ex. A].

But before we can address this argument, we must first determine if the PACS Agreement can be considered at the motion to dismiss stage. Our review at the motion to dismiss stage is limited to the four corners of the complaint with the only exception being if: (1) the PACS Agreement is central to the FDUPTA claim; and (2) the document is not in dispute. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). "'[U]ndisputed' means that the authenticity of the document is not challenged." *Id.* (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

X-Ray does challenge the authenticity and validity of the PACS Agreement. For this reason alone, we cannot consider the PACS Agreement for this motion. *See Horsley*, 304 F.3d at 1134. And without the PACS Agreement, Defendants have no support for their challenge against the FDUPTA claim. Defendants' motion to dismiss Count VIII should thus be **DENIED**.[3]

### F.   *Jury Demand*

Having resolved the arguments related to Plaintiff's causes of action, we move to GE's argument to strike X-Ray's demand for a jury trial. GE contends the parties waived their rights to a jury trial in the IFSA, so X-Ray's request must be stricken with prejudice. X-Ray does not dispute that it waived its right to a jury for its contract claims. It instead argues the provision should be read narrowly as to not cover its tort and FDUTPA claims, which it argues are separate from the contract claims.

---

[3]   If Plaintiff later concedes the PACS Agreement is valid, a variety of sanctions against it may be appropriate under Rule 11 or 28 U.S.C. § 1927.

According to X-Ray, judicial economy and efficiency thus warrants a trial by jury on all issues in this lawsuit.

The jury trial waiver in the IFSA states:

> TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION OR COUNTERCLAIM ARISING UNDER *OR IN ANY WAY RELATED TO THIS AGREEMENT, AND UNDER ANY THEORY OF LAW OR EQUITY*, WHETHER NOW EXISTING OR HEREAFTER ARISING.

[D.E. 1, Ex. A, ¶ 14.5] [emphasis added].

While the Court determined that X-Ray pled a standard of care for its negligence claims independent of its contract claims that could withstand a motion to dismiss, it fails to show how the tort or the FDUTA claims are not "in any way related to the [IFSA]." *See Yeh Ho v. Wells Fargo Bank, N.A.*, 2020 WL 1163473, at *1 (S.D. Fla. Mar. 11, 2020) (finding a very similar provision to be enforceable in waiving a jury trial for related claims outside of the subject contract and noting that courts routinely enforce such language) (citations omitted). The negligence and FDUPTA claims—based on GE allegedly handling the design and construction of the Lab, including the installation of the HVAC system, and the sale of the PACS System for the Lab—are clearly related to GE selling and financing the equipment for the Lab under the IFSA. *See World Fuel Servs., Inc. v. Thrifty Propane, Inc.*, 2016 WL 11547771, at *11 (S.D. Fla. July 15, 2016) (finding a jury trial waiver provision in a contract to sell propane that included the language: "claim[s] arising out of or in relation to or in connection with a contract or this agreement or the operations carried

13

out under a contract or this agreement" covered related fraud-based and FDUTPA claims and thus struck with prejudice a jury demand.).

Defendants' motion to strike Plaintiff's demand for a jury trial should therefore be **GRANTED**. The case must be tried to the Court.

### G.  Damages

Defendants last move to strike the damages sought by Plaintiff for lost profits and other forms of consequential and incidental damages. The parties agreed in the IFSA that available remedies in connection with a dispute would not include "any special, consequential, incidental or penal damages including but not limited to, loss of profit or revenue . . . .". [D.E. 1, Ex. A, cl. 10]. Negotiated limitation of liability provisions like this one are enforceable to bar recovery of such damages. *See, e.g.*, *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1168 (11th Cir. 2009). X-Ray, however, challenges the enforceability of the IFSA provision because it argues the provision is illusory.

In support of X-Ray's argument, it relies on *Hardwick Props., Inc v. Newbern*, 711 So. 2d 35 (Fla. 1st DCA 1998). In *Hardwick*, the court found that a remedies provision *could* be illusory if it only provided a party specific performance in a real estate development deal and no right to recover all possible damages. *See id.* at 39. The court stated that an inquiry into a damages provision being illusory should focus "on whether the contract could, in effect, be breached virtually at will . . . or whether [a party] would be exposed to sufficient damages . . . .". *Id.* (citing *Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1099 (Fla. 1990)). Ultimately, the court found that the

plaintiff could possibly recover general damages and remanded to the lower court to determine if the general damages were so insubstantial to make the remedies provision illusory. *See id*. at 40. This case does not support X-Ray's position.

X-Ray may recovery general damages up to the value of the equipment GE sold it, which is approximately $3 million dollars according to the complaint. GE was thus not able to breach the IFSA at will without being exposed to substantial damages, so the IFSA damages provision is not illusory. X-Ray's additional argument that the provision cannot be applied to a FDUTPA claim is also unavailing. *See Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012) ("It remains well-settled in Florida that consequential damages in the form of lost profits are not recoverable under FDUTPA . . . Plaintiffs' request for lost profits under FUDTPA is dismissed with prejudice.").

Defendants' motion to strike damages precluded by the IFSA should thus be **GRANTED**. Plaintiff, however, may still seek alternative remedies for its negligence claims and damages allowed under FDUPTA that are not limited by the contract.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion [D.E. 8] be **GRANTED in part** and **DENIED in part** as follows:

1. Defendants' motion to dismiss Counts I and II be **DENIED**;

2. Defendants' motion to dismiss Counts III and IV be **GRANTED *with leave to amend***;

3. Defendants' motion to dismiss Counts V and VI be **GRANTED *with leave to amend***;

4. Defendants' motion to dismiss Count VII be **GRANTED** *with prejudice*;

5. Defendants' motion to dismiss Count VIII be **DENIED**;

6. Defendants' motion to strike the jury demand be **GRANTED**; and

7. Defendants' motion to strike damages precluded by the IFSA be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 4th day of February, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge